UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| KELLY E. WILLIAMS, ) | CASE NO. 1:12 CV 2499 |
| ) | |
| Plaintiff, ) | JUDGE DAN AARON POLSTER |
| ) | |
| v. ) | MEMORANDUM OF OPINION |
| ) | AND ORDER |
| BOB REID, et al., ) | |
| ) | |
| Defendants. ) | |

Pro se prisoner Kelley E. Williams filed the above-captioned in forma pauperis action against Cuyahoga County Sheriff Bob Reid, Director of Corrections Kenneth Kocheva, Cuyahoga County Corrections Center Warden Ronald L. Shobert, and Cuyahoga County Director of Medical Services John Barnett in their individual and official capacities. Mr. Williams asserts this Court's jurisdiction pursuant to 28 U.S.C. § 1983 and the Americans with Disability Act (ADA). He alleges the defendants deprived him of his right to due process under color of state law in violation of the United States Constitution. He seeks $1,000.000.00 each in compensatory and punitive damages, as well as an order directing the defendants to provide him adequate medical care.

*Background*

Mr. Williams was held as a pre-trial detainee at the Cuyahoga County Corrections Center (CCCC) on June 19, 2012.[1] At that time he notified the nurse on duty that he suffered from multiple sclerosis and pain from a toothache. He maintains "nothing was done for the MS [other] than to assign me a broken cane with a worn out pad and daily shot of Copaxone 20 mil."[2] The shots, however, were "routinely missed" causing him extreme pain. Mr. Williams claims, further, that the medical pod in which he was placed contained mold, with thousands of gnats biting him in the shower room and chipping paint on the walls. The conditions caused him to experience bouts of nausea.

On September 2, 2012, Mr. Williams filed a grievance complaining about the conditions in the medical pod as well as a tooth that needed to be pulled to alleviate his toothache. (Pl.'s Ex.1, p. 2.) He asked for the care of a neurologist and to be hospitalized. While he acknowledged receiving daily dosages of Copaxone, he claimed these were missed "multiple times." Id. It is not clear whether the jail exhausted its supply of Copaxone, but it did respond to Mr. Williams's grievance by stating his 20-mg daily dosage of Copaxone was ordered on September 10, 2012. Id.

On September 7, 2012, Mr. Williams's tooth was extracted. He claims, however, that the tooth was pulled "against my will." (Compl. at 4.)

---

[1] Since filing this Complaint, Mr. Williams has advised the Court that he has been transferred to Lake Erie Correctional Institution in Conneaut, Ohio.

[2] Copaxone is the brand name for Glatiramer, which is "used to reduce episodes of symptoms in patients with relapsing-remitting multiple sclerosis. Glatiramer is in a class of medications called immunomodulators. It works by stopping the body from damaging its own nerve cells." National Institutes of Health/National Library of Medicine, http://www.nlm.nih.gov/medlineplus/druginfo/meds/a603016.html

Mr. Williams's grievance also claimed the toilets at CCCC were constantly back flowing human waste on the floors of the "medically disabled pod" where he is located. When a crew of plumbers arrived on September 13, 2012 to snake the drain pipes, Mr. Williams complained the inmates were ordered into their "locked, smell[y] and waste suffocating, over crowded cells." (Compl. at 6.) During this period, the plumbers were allegedly "causing eardrum damaging noise, [and] labored for hours to snake toilets and drain pipes to clean up the . . . sludge." Id. Mr. Williams notes that, "[u]nlike when an inmate causes damages, no CCJ photos were taken." Id. He believed any inmate caught taking photographs would have been disciplined.

Mr. Williams does not disclose whether the plumbers successfully addressed the drainage problems at CCCC.  Instead, he filed appealed his grievance on September 15, 2012 "in order to exhaust his administration rendies [sic]." (Compl. at 7.) The appeal included the signatures of 16 other parties, presumably inmates housed in the medical pod, who averred the toilets backed up earlier that month and that they were ordered on September 13, 2012 not to flush their toilets while the plumbers were working, or face disciplinary action. He claims there was no written response to the appeal of his grievance.

*Standard of Review*

Although pro se pleadings are liberally construed, Boag v. MacDougall, 454 U.S. 364, 365 (1982) (per curiam); Haines v. Kerner, 404 U.S. 519, 520 (1972), the district court shall dismiss an action under section 1915(e) if it fails to state a claim.[3] An action is subject to dismissal if it lacks

---

[3]  28 U.S.C. § 1915(e) states, in pertinent part: "the court ... shall dismiss the case ... if the court determines that ... the action is frivolous or malicious ...".

A claim may be dismissed sua sponte, without prior notice to the plaintiff and without

(continued...)

an arguable basis in law or fact. Neitzke v. Williams, 490 U.S. 319 (1989); Lawler v. Marshall, 898 F.2d 1196 (6th Cir. 1990).

*Civil Rights Violations*

To prevail in a civil rights action under 42 U.S.C. §1983, a plaintiff must plead and prove that the defendants, acting under color of state law, deprived the plaintiff of a right secured by the Constitution and law of the United States. Parratt v. Taylor, 451 U.S. 527, 535 (1981), overruled on other grounds, Daniels v. Williams, 474 U.S. 327 (1986). Section 1983 alone creates no substantive rights; rather it is the means through which a plaintiff may seek redress for deprivations of rights established in the Constitution or federal laws. Baker v. McCollan, 443 U.S. 137, 144 n. 3 (1979). The statute applies only if there is a deprivation of a constitutional right. See e.g., Paul v. Davis, 424 U.S. 693, 699-701(1976); Baker, 443 U.S. at 146-47. Thus, "[t]he first inquiry in any § 1983 suit ... is whether the plaintiff has been deprived of a right 'secured by the Constitution and laws'" of the United States. Baker, 443 U.S. at 140.

Mr. Williams alleges the defendants violated his civil right to due process under the Constitution. As a pre-trial detainee, the Due Process Clause of the Fourteenth Amendment guarantees him a right to receive constitutionally adequate medical care and assure his conditions of confinement pass constitutional muster. Bell v. Wolfish, 441 U.S. 520, 535 (1979). For purposes of considering his claims, the Court is essentially conducting the same analysis of his claim as that

---

(...continued)
 service of process on the defendant, if the court explicitly states that it is invoking section 1915(e) [formerly section 1915(d)] and is dismissing the complaint as frivolous. McGore v. Wrigglesworth, 114 F.3d 601, 608-09 (6th Cir. 1997); Spruytte v. Walters, 753 F.2d 498, 500 (6th Cir. 1985), cert. denied, 474 U.S. 1054 (1986); Harris v. Johnson, 784 F.2d 222, 224 (6th Cir. 1986); Brooks v. Seiter, 779 F.2d 1177, 1179 (6th Cir. 1985).

of a convicted prisoner alleging cruel and unusual punishment in violation of the Eighth Amendment. *See Martin v. Gentile*, 849 F.2d 863, 870 (4th Cir.1988) (Holding that the 14th Amendment guarantees at least 8th Amendment protections); *Estate of Miller, ex. Rel. Bertram v. Tobiasz*, 680 F.3d 984, 989 (7th Cir.2012) ("The same standard applies for determining claims of deliberate indifference to the serious medical conditions of pretrial detainees and incarcerated individuals, though pursuant to the Fourteenth Amendment for pretrial detainees rather than the Eight Amendment.")

"To sustain a cause of action under [Section] 1983 for a failure to provide medical treatment, a plaintiff must establish that the defendants acted with 'deliberate indifference to serious medical needs.'" Watkins v. City of Battle Creek, 273 F.3d 682, 685-86 (6th Cir.2001) (quoting Estelle v. Gamble, 429 U.S. 97,104 (1976)). There are two critical components to this inquiry: one objective and one subjective. Comstock v. McCrary, 273 F.3d 693, 702 (6th Cir.2001). "To satisfy the objective component, the plaintiff must allege that the medical need at issue is 'sufficiently serious.'" Id. (quoting Farmer v. Brennan, 511 U.S. 825, 834 (1994)). The Sixth Circuit has held that the objective component of deliberate indifference in a medical-needs case is met where a plaintiff produces evidence of a "serious medical need." Blackmore v. Kalamazoo Cnty., 390 F.3d 890, 896 (6th Cir.2004). The term "serious medical need" was further defined as either "'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" Harrison v. Ash, 539 F.3d 510, 518 (6th Cir.2008)(quoting Blackmore, 390 F.3d at 897). "To satisfy the subjective component, the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the

inference, and that he then disregarded that risk." Id. at 703.

Dental needs fall into the category "of serious medical needs" because "[d]ental care is one of the most important needs of inmates." McCarthy v. Place, 313 Fed. Appx. 810, 814 (6th Cir.2008) (quoting Ramos v. Lamm, 639 F.2d 559, 576 (10th Cir.1980)). The Second Circuit has recognized that "[a] cognizable claim regarding inadequate dental care, like one involving medical care," is "based on various factors, such as the pain suffered by the plaintiff, the deterioration of the teeth due to a lack of treatment, or the inability to engage in normal activities." Chance v. Armstrong, 143 F.3d 698, 703 (2d Cir.1998). Here, Mr. Williams claims he was suffering from a toothache, advised the defendants, asked for the removal of his tooth and when the jail extracted the tooth it was "against his will." In his Complaint he alleges the jail should have performed a root canal and provided a "porcelain/synthetic/gold crown." (Compl. at 9.) While he may disagree with the prison's treatment plan, he was not denied medical care for his toothache.

First, there is no allegation Mr. Williams requested or required a root canal. In the grievance he attaches to the Complaint, he explicitly complains about acute pain he was suffering from the tooth he wanted the jail to remove. Secondly, there is no dispute the defendants addressed his medical grievance 5 days after his request and removed the tooth which caused the pain from which he was suffering. He does not allege the tooth deteriorated due to a lack of treatment, or that he was unable to engage in normal activities after the defendants provided the medical treatment he requested. Therefore, Mr. Williams has not demonstrated the defendants' decision to extract a painful tooth caused him to be "incarcerated under conditions imposing a substantial risk of serious harm." Blackmore, 390 F.3d at 895.

With regard to Mr. Williams's treatment for MS he has similarly failed to state a claim based

on the denial of adequate medical care. The medical needs to which a pre-trial detainee is entitled are not without limits. The Due Process Clause does not prohibit every deprivation by the state of a person's life, liberty or property. *Harris v. City of Akron*, 20 F.3d 1396, 1401 (6th Cir. 1994). Only those deprivations of constitutionally protected interests which are conducted without due process are subject to the Civil Rights Act. See id.

When Mr. Williams was taken into custody by the defendants he disclosed that he suffered from MS and was immediately provided a cane and given medication prescribed for MS. While he claims the cane was "broken," it is not clear whether he is complaining about the worn padding on the cane or if the unit was actually cracked. If the cane was not functional there is certainly no allegation that he subsequently requested a replacement cane from the defendants and that his request was denied. Rather than show deliberate indifference to Mr. Williams's concerns or acquiescing in any deprivation, the prison took steps to continue his Copaxone injections within one week from the date of his grievance.

Finally, Mr. Williams claims he did not see a doctor until September 18, 2012. At that time, he claims he requested "Ocean Spray (KOP) Keep on Person. She said they don't have anything and she can't do anything for me." (Compl. at 7.) Even if this is true, it does not rise to the level of a Constitutional violation. While Mr. Williams states he advised the doctor that he suffered from "severe critical MS, sinus and other critical medical issues," he does not allege what (if any) medical care she denied. Mr. Williams was housed in a medical unit at the jail, he was prescribed a drug treatment specifically for his MS and he was provided some device to assist with his mobility. There are simply no facts alleged that support a violation of his right to due process based on the defendants' treatment of his MS.

*Prison Conditions*

If a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.' " Bell, 441 U.S. at 538. "In assessing whether the conditions are reasonably related to the assigned purposes, [the court] must further inquire as to whether these conditions cause [inmates] to endure [such] genuine privations and hardship over an extended period of time, that the adverse conditions become excessive in relation to the purposes assigned to them." Hubbard v. Taylor, 399 F.3d 150, 159-160 (3d Cir. 2005)(citing Bell, 441 U.S. at 542) (internal quotation marks omitted).

Mr. Williams filed a grievance on September 2, 2012 complaining about the conditions of the medical pod in which he was housed. As a result, the prison hired plumbers to clear the drain pipe and improve the conditions about which Mr. Williams complained. When the plumbers arrived at the jail eleven days after Mr. Williams filed his grievance, however, he complains that he and other inmates in the unit were forced to remain in their cells without flushing the toilets. If any prisoner chose to disregard this directive he would be subject to disciplinary action.

As a threshold matter, the Court cannot ignore the fact that the defendants addressed Mr. Williams's concerns by hiring plumbers to clear the drains. There is no allegation the plumbers' efforts were unsuccessful or that the defendants refused to address the conditions about which he complained. Moreover, while Mr. Williams claims the plumbers worked "for hours" to clear the drain, he does not allege they remained at the jail beyond one day. It is not unreasonable to refrain from using toilets in the midst of repairing the plumbing through waste products are required to drain. Therefore, to the extent the conditions of Mr. Williams's confinement required him to remain locked in his cell without flushing the toilet and inhale foul odors, the discomfort was temporary and

the adverse conditions were not excessive in relation to the purpose of repairing the clogged drain pipes.

*Americans with Disabilities Act*

The ADA seeks to eliminate disability discrimination on three fronts: employment (Title I, 42 U.S.C. §§ 12111–12117); public services offered by public agencies (Title II, 42 U.S.C. §§ 12131–12165); and public services and accommodations offered by private entities (Title III, 42 U.S.C. §§ 12161–12189). Although Mr. Williams does not identify under which Title of the ADA he is seeking relief, the facts he alleges would only address a cause of action under Title II of the ADA

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of *a public entity*, or be subject to discrimination by any such entity." 42 U.S.C. § 12132 (emphasis added). Even liberally construing Mr. Williams's claim as an allegation that he was denied a public service, the Complaint cannot survive.

With respect to public services, "the ADA prohibits disability discrimination only in the services of a 'public entity.' 42 U.S.C. § 12132. The statute defines such an entity as "any State or local government" and "any department, agency, special purpose district, or other instrumentality of a State or States or local government." 42 U.S.C. § 12131(1). A "public entity" includes state prisons and "Title II authorizes suits by private citizens for money damages against public entities that violate § 12132." *United States v. Georgia*, 546 U.S. 151, 154 (2006). To establish a prima facie case under Title II of the ADA, a plaintiff must show that: "(1) he is a 'qualified person with a disability'; (2) he was either excluded from participation in or denied the benefits of a public

entity's services, programs or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability." Id. at 443 (citation omitted). Furthermore, the proper defendant under a Title II claim is the public entity or an official acting in his official capacity. Carten v. Kent State Univ., 282 F.3d 391, 396–97 (6th Cir.2002).[4]

Even accepting Mr. Williams's averment that he is disabled, he has not alleged he was denied services and/or that he was otherwise discriminated against because of his disability. See e.g. McDonald v. Union Camp Corp., 898 F.2d 1155, 1162 (6th Cir.1990) (Conclusory allegations are not sufficient to defeat a properly supported summary judgment motion). By his own admission, Mr. Williams's disability was considered and accommodated the moment he was housed in the medical unit, prescribed medication and assigned a cane.

Legal conclusions alone are not sufficient to present a valid claim, and this Court is not required to accept unwarranted factual inferences. Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987); see Place v. Shepherd, 446 F.2d 1239 (6th Cir. 1971) (conclusory section 1983 claim dismissed). Mr. Williams's claim of disability discrimination omits any basis upon which the defendants either engaged in any prohibited acts under the Civil Rights Act or Title II of the ADA.

*Conclusion*

Accordingly, this action is dismissed under section 28 U.S.C. §1915(e), but without prejudice as to any state law claims Mr. Williams may choose to pursue. The Court certifies, pursuant to 28

---

[4]To the extent that plaintiff is asserting claims under the ADA against defendants in their individual capacities, such claims fail as a matter of law. Everson v. Leis, 556 F.3d 484, 501 (6th Cir.2009) (Title II of the ADA does not provide for suit against a public official acting in his individual capacity).

U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.[5]

IT IS SO ORDERED.

>   */s/Dan Aaron Polster 6/26/13*
>    DAN AARON POLSTER
>    UNITED STATES DISTRICT JUDGE

---

[5] 28 U.S.C. § 1915(a)(3) provides:

> An appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith.